IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PAT BRITTON, Personal Representative of the Estate of JESSE BRITTON, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD THOMPSON, in his official and individual capacities; DAN KLING, in his official and individual capacities; and CITY OF CRAWFORD, a Nebraska political subdivision,<br><br>Defendants. | CASE NO. 7:08CV5008<br><br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Defendants' Motions for Summary Judgment (Filing Nos. 53, 55, and 64); Defendants Dan Kling and Richard Thompson's Motions to Strike (Filing Nos. 81 and 82); Defendant Richard Thompson's Motion to Quash Plaintiff's Notice of Intent to Serve Subpoena on Nonparty (Filing No. 86); and Defendant Richard Thompson's Motion to Disqualify Plaintiff's Attorney (Filing No. 89). For the reasons set forth below, Defendants' Motions for Summary Judgment will be granted. All other motions will be denied as moot.

### FACTS[1]

Pat Britton ("Britton") is the mother and personal representative of the Estate of Jesse Britton ("Jesse"). (Filing No. 1, Complaint ("Compl."), ¶ 3.) Jesse was sixteen years

---

[1] Plaintiff's brief in opposition to Defendants' Motions for Summary Judgment does not respond to each of the numbered paragraph in Defendants' statement of facts as required by NECivR 56.1(b)(1). The Defendants' uncontroverted material facts, properly supported with pinpoint citations to the evidentiary record, are deemed admitted. *Id.* Regardless, there are no genuine issues of material fact.

old and a Nebraska resident at the time of his death in Crawford, Nebraska. (Compl., ¶ 5; Filing No. 22, Answer, ¶ 3.) Defendant Dan Kling ("Kling") at all relevant times was employed as a conservation officer with the Nebraska Game & Parks Commission. Defendant Richard Thompson ("Thompson") at all relevant times was employed as a police officer for the Defendant City of Crawford (the "City"). (Compl., ¶ 4.)

On the morning of October 3, 2007, Jesse was a suspect in several burglaries, including one involving a stolen firearm. (Compl., ¶ 5; Answer ¶ 5.) During their investigation of the burglaries, Thompson and Kling received information that Jesse was hiding in a vacant building in downtown Crawford called the "Frontier Bar". (Filing No. 54-2, Affidavit of Richard Thompson ("Thompson Aff."), ¶ 8; Filing No. 54-3, Affidavit of Dan Kling ("Kling Aff."), ¶ 20.) Thompson also learned that Jesse had threatened to shoot Thompson. (Thompson Aff., ¶ 8.)

Once Thompson learned of Jesse's probable whereabouts, he obtained permission to enter the Frontier Bar from Raylene Suchor, the realtor with keys to the building. (Thompson Aff., ¶ 11.) Thompson, Kling, and other law enforcement officers then went to the Frontier Bar. (*Id.*, ¶ 12.) Upon arrival, Thompson assigned two Crawford Police Officers, Paul Kimminau and Matthew Moore, to secure the exterior of the bar at the northeast and southwest corners of the building. (*Id.*; Filing No. 80-13, 55:19-25.) Thompson asked Officer Kling for assistance in searching the interior of the bar, and also requested that Kling carry his state-issued shotgun. (Thompson Aff., ¶ 12; Filing No. 80-13, 56:1-3.) Kling and Thompson then entered the bar using the realtor's keys. (Thompson Aff., ¶ 13; Filing No. 80-13, 57:7-10.) According to Officer Kimminau, the purpose of Thompson and Kling's entry into the bar was to take Jesse "into custody for

2

questioning" if they found him. (Filing No. 80-12, 48:3-6.) At no time was there any discussion about requesting assistance from the state patrol or the county sheriff's office. (*Id.*, 49:22-25.)

According to Thompson and Kling,[2] after entering the bar they searched the first floor of the bar. (Thompson Aff., ¶ 13; Kling Aff., ¶¶ 39-43.) While searching, Kling heard footsteps from the second floor. (Thompson Aff., ¶ 13; Kling Aff., ¶ 44.) Thompson and Kling then proceeded upstairs to the second level. (Thompson Aff., ¶ 14; Kling Aff., ¶ 45.) Once upstairs, Thompson heard a noise and both he and Kling saw Jesse crouched behind a piece of furniture. (Thompson Aff., ¶ 15; Kling Aff., ¶ 48.) Both defendants shouted commands at Jesse, who refused to comply and instead "sprang up pointing his gun at Chief Thompson." (Kling Aff. ¶ 49). After Jesse failed to comply with commands to drop the gun, both defendants shot him.[3] (Thompson Aff., ¶¶ 15-16; Kling Aff., ¶¶ 49-

---

[2]Britton does not respond to Thompson and Kling's assertions about their face-to-face confrontation with Jesse. Further, Britton's argument states that Thompson and Kling's face-to-face interaction with Britton is immaterial. As noted above, the Court therefore deems Thompson and Kling's account admitted by Britton.

[3]"I yelled, 'Show me your hands! Show me your hands!' Instead of complying with my commands, Jesse Britton stood up. I saw he had a gun. I yelled, 'Drop it! Drop it!' He did not drop the gun and instead kept it pointed at me. When Jesse Britton did not drop the gun and continued to keep it pointed at me, I felt that he was going to shoot me. I was in fear for my life. Fearing that he was going to shoot me and that I was going to die, I fired my weapon three times." (Thompson Aff. ¶¶15-16). "I saw the suspect make eye contact with Chief Thompson and then the suspect instantly sprang up pointing his gun at Chief Thompson. . . . I could tell by the cylinder that it was a real gun at the time. . . . I heard a shot fired that was not mine. It was my belief that the suspect had fired his gun at Chief Thompson. . . . After I heard the first shot that I believed to be shot by the suspect, I instantly fired my shotgun towards the center mass of the suspect in defense of Chief Thompson. . . . The suspect's body then rotated slightly clockwise causing his gun to start to swing towards me. It was my belief the suspect was going to shoot me. I fired a second round at the center mass of the suspect." (Kling Aff. ¶¶ 49, 51, 52).

52.) Only ten to twelve minutes passed between the time Thompson and Kling entered the bar to when shots were fired.  (Filing No. 80-12, 51:14-22.)

Britton asserts claims under 42 U.S.C. § 1983 and Nebraska common law, alleging that Defendants' conduct was "reckless and intentional" and led to the use of deadly force. (Compl., ¶¶ 2, 13.)  Britton argues that, by the time and manner in which Thompson and Kling entered the bar, they caused the circumstances that ultimately led to the need to use deadly force.  (*Id.* ¶ 13; Filing No. 79, p. 1.)  Britton alleges that the City "acted with deliberate indifference" to the "known risk" of depriving Jesse of his constitutional liberty interests through its custom or practice of failing to train its employees. (Compl., ¶¶ 15-17.) Britton seeks compensatory and punitive damages, attorney fees, and costs.  (*Id.*, p. 7.)

Defendants Thompson and Kling move the Court for summary judgment based on qualified immunity, arguing they did not violate Jesse's clearly established constitutional rights by firing on Jesse when he pointed a gun at Thompson.  The City moves for summary judgment, asserting that Jesse's injury was not the result the City's official policy or custom, and that the City is not liable under the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-902 (Reissue 2007).

## STANDARD OF REVIEW

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, . . . Rule 56(e) permits a proper summary judgment motion to be

4

opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law.'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985)). Thus, a "genuine issue" is more than "'some metaphysical doubt as to the material facts,'" *Nitro Distrib.,* 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586-87), and "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Bloom*, 440 F.3d at 1028-29 (emphasis removed) (quoting *Anderson*, 477 U.S. at 247-48).

In other words, in deciding "a motion for summary judgment, [the] facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009). Otherwise, where

the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "genuine issue for trial"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *see also Scott v. Harris,* 550 U.S. 372 (2007).

## DISCUSSION

I.  **Qualified Immunity**

Kling and Thompson argue qualified immunity protects them from suit. Qualified immunity protects government officials from suit under 42 U.S.C. § 1983 when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Nance v. Sammis*, No. 09-1353, 2009 WL 3735814, at *3 (8th Cir. Nov. 10, 2009). To defeat qualified immunity, the plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009). The Court, in its discretion, may address either prong first. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). If no reasonable factfinder could answer both questions affirmatively, the defendant is entitled to qualified immunity. *Nance*, 2009 WL 3735814, at *3. In this case, the Court finds that no reasonable factfinder could answer either question affirmatively, because (1) under Eighth Circuit case law, police officers do not have a constitutional duty to avoid violent situations when effecting a lawful arrest, and (2) even if a duty to minimize violence exists, it does not form the basis of a clearly established constitutional right.

6

### A.     Was There a Violation of Jesse's Constitutional Rights?

Britton argues that the officers' actions against Jesse constituted excessive force[4] in violation of the Fourth Amendment.  Claims alleging excessive force incident to arrest, and unlawful seizure, are analyzed under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989);  *Nance*, 2009 WL 3735814, at *4; *see also McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003) ("[t]o establish a violation of the Fourth Amendment in a section 1983 action, the claimant must demonstrate a seizure occurred and the seizure was unreasonable.").  For the purpose of the Fourth Amendment, a seizure occurs when "an officer restrains an individual's liberty through physical force or a show of authority." *Howard*, 570 F.3d at 988 (quoting *Moor v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008)).  "Apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."  *Nance,* 2009 WL 3735814, at *4 (quoting *Hassan v. City of Minneapolis*, 489 F.3d 914, 919 (8th Cir. 2007)).  Because Thompson and Kling shot and killed Jesse, a Fourth Amendment seizure occurred and the Court must determine whether the seizure was reasonable.

Whether an officer's actions are "objectively reasonable" depends on the facts and circumstances surrounding the officer's actions, without regard to the officer's underlying motivation or intent.  *Id.*    In assessing the reasonableness of an officer's conduct, one must consider the totality of the circumstances.  *Tennessee v. Garner*, 471 U.S. 1, 8-9

---

[4]The Complaint does not specify which Fourth Amendment right was violated. However, Plaintiff's brief in opposition to Defendants' Motions for Summary Judgment indicates Britton's claim is for excessive force.  (Filing No. 79 at 6-16.)

7

(1985). The analysis should focus on factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Nance,* 2009 WL 3735814, at *4.

At this juncture, it is important to note that Britton does not argue that Thompson and Kling lacked probable cause to arrest Britton or even that their use of deadly force was unreasonable when they were face-to-face with Jesse. Essentially, Britton argues that Thompson and Kling violated Jesse's Fourth Amendment rights by creating a foreseeably dangerous situation in which they arrested Jesse. In support of this argument, Britton contends that the factors announced by the Supreme Court in *Garner* suggest qualified immunity is not available to Thompson and Kling.

The proper perspective in judging an excessive force claim is that of "a reasonable officer on the scene" precisely when force was employed. *Graham*, 490 U.S. at 396. The Eighth Circuit has stated that in determining Fourth Amendment reasonableness, "the district court should scrutinize only the seizure or seizures themselves, not the events leading to them." *Ludwig v. Anderson*, 54 F.3d 465, 471 (8th Cir. 1995). In *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995), the Eighth Circuit upheld the exclusion of evidence of police conduct before the use of deadly force. The Eighth Circuit read *Graham's* use of the words "at the moment" and "split-second judgment" as strong indicia that the reasonableness inquiry only addresses the facts known to the officer at the precise moment of the seizure, not the officers' actions leading to the confrontation. *Id.* Therefore,

the Eighth Circuit held that such evidence is irrelevant to the determination of reasonableness. *Id.* at 649. The Eighth Circuit also said:

> The Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within a range of conduct which is objectively "reasonable" under the Fourth Amendment.

*Id.*

Thompson and Kling did not violate Jesse's Fourth Amendment rights by creating a dangerous situation. Britton's brief frames the issue:

> Was it reasonable for Defendants THOMPSON and KLING to enter the Frontier Bar at the time and in the manner they did, knowing that JESSE may be armed and further knowing that there was no emergency or exigent circumstance that required the risk of escalating tensions between Defendants and JESSE?

(Filing No. 79, p. 1.)

Britton states that the officers' entry was a reckless provocation of violence that rendered the officers' use of deadly force unreasonable. Britton refers to statements of other law enforcement personnel indicating that, under such circumstances, they would not have entered the building. At most, these statements support a claim of negligence, but do not establish that Thompson and Kling's use of force was constitutionally unreasonable.[5] While Thompson and Kling's decision to enter the building may have been unadvisable, and had a consequence that was tragic for Britton, a constitutional violation cannot be found based on the theory that acts of the officers "preceding the seizure caused the circumstances which ultimately led to the need to use deadly force." *Schulz*, 44 F.3d

---

[5]*See Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002) ("the fact that an officer negligently gets himself into a dangerous situation will not make it unreasonable for him to use force to defend himself.").

at 648. An officer may use deadly force where the officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at 3. Britton does not argue that Thompson and Kling's use of deadly force at the moment of the seizure was unjustified, only that they caused the circumstances leading to the use of deadly force. The Fourth Amendment does not require officers to avoid dangerous situations when making a lawful arrest. Therefore, Thompson and Kling's actions did not violate Jesse's constitutional rights.

### B. Was Any Such Constitutional Right Clearly Established?

Even if this Court were to find that the officers' pre-seizure conduct was unconstitutionally unreasonable, such a standard was not clearly established at the time of the officers' conduct. "A constitutional right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Nelson v. Correctional Med. Servs.*, 583 F.3d 522, 531 (8th Cir. 2009) (quoting *Hope*, 536 U.S. at 739). For a reasonable person to know that his or her conduct might violate the Constitution, the unlawfulness must be apparent from existing law. *Id.* Where the federal circuits disagree about a point of law, the law cannot be considered clearly established. *See Evenstad v. Carlson*, 470 F.3d 777, 783 (8th Cir. 2006). At a minimum, federal circuits disagree as to whether evidence of the events preceding an actual seizure must be considered when determining the constitutional reasonableness of the seizure.[6]

---

[6]*Compare Ludwig*, 54 F.3d at 471 ; *Schulz*, 44 F.3d at 648 (reasonableness inquiry only extends to facts known to officer at precise moment of seizure); *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992) (stating that pre-seizure conduct is not subject to Fourth Amendment scrutiny) *with Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997) (reasonableness depends on the danger at the moment police used force and whether their own conduct unreasonably created the need to use such force).

No reasonable officer in Thompson and Kling's position would understand their actions to be an infringement on the suspect's constitutional rights, based on existing law. Britton cites no authority for the argument that police must choose the course of action having the least potential for violence when effecting a legal arrest.[7] Some case law states the opposite. *See Schulz*, 44 F.3d at 649 (Supreme Court case law precludes argument that the need for deadly force was the result of police officers' actions); *St. Hilaire v. City of Laconia*, 71 F.3d 20, 27 (1st Cir. 1995) (rejecting the broad contention that police have a duty to reduce the risk of violence, because it would be unclear what conduct would violate the duty unless a prior case dealt with precisely the same facts); *Carter*, 973 F.2d at 1332 (rejecting the contention that "the Fourth Amendment prohibits creating unreasonably dangerous circumstances in which to effect a legal arrest of a suspect."). Because the "right" Britton claims the defendants violated was not clearly established at the time of the seizure, Thompson and Kling are entitled to qualified immunity.

## II.     Municipal Liability - Failure to Train

Britton also alleges that the City is liable for failure to train its employees in proper negotiation, de-escalation techniques, and proper handling of alleged standoffs. Because the uncontroverted evidence shows that the Defendant officers did not violate Jesse's constitutional rights, the City may not be held liable for failure to train. *Hassan*, 489 F.3d at 920; *see also Schulz*, 44 F.3d at 650 ("[i]t is the law in this circuit . . . that a municipality

---

[7]None of the cases examined by Britton suggests this right is clearly established. *See Holland v. Harrington*, 268 F3d 1179, 1189 (10th Cir. 2001) (deciding the reasonableness of a the decision to deploy a SWAT team); *Leghart v. Hauk*, 14 F. Supp. 2d 748, 752 (W.D. Tex. 1998) (deciding whether officer had reasonable means to escape from suspect trying to ram him with car rather than firing weapon into vehicle).

may not be held liable on a failure-to-train theory unless an underlying Constitutional violation is located") (citing *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994)).

### III.   State Common Law Tort Claims

In addition to her constitutional claims, Britton's seeks damages under Nebraska common law.  Because the Court grants summary judgment in favor of Defendants on the constitutional issues, the federal character of Britton's complaint is eliminated.  Where federal issues have been eliminated, a district court has discretion to dismiss a plaintiff's state claims.  *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 644 (8th Cir. 2008); *see also Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims once all federal claims have been dismissed . . . .").  This Court exercises that discretion and declines jurisdiction over Britton's state law claims.[8]  The normal practice following summary judgment on federal claims is to dismiss state law claims without prejudice. *Labickas v. Arkansas State Univ.*, 78 F.3d 333, 334-35 (8th Cir. 1996).  Therefore, Britton's state law claims will be dismissed without prejudice.

IT IS ORDERED:

1.   Defendants' Motions for Summary Judgment (Filing Nos. 53, 55, and 64) are granted;

2.   The Plaintiff's claims asserted under the United States Constitution and federal law are dismissed with prejudice;

---

[8]The Complaint does not delineate Britton's claims into separate state and federal causes of action.

3. The Plaintiff's claims asserted under state law are dismissed without prejudice;

4. Defendants Dan Kling and Richard Thompson's Motions to Strike (Filing Nos. 81 and 82) are denied as moot;

5. Defendant Richard Thompson's Motion to Quash Plaintiff's Notice of Intent to Serve Subpoena on NonParty (Filing No. 86) is denied as moot;

6. Defendant Richard Thompson's Motion to Disqualify Plaintiff's Attorney (Filing No. 89) is denied as moot; and

7. A separate judgment will be entered.

DATED this 20th day of November, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge